UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

───────────────────────────────

KONSTANTIN RUDENKO,

                      Petitioner,

– against –

COXSACKIE WARDEN,

                      Respondent.

**MEMORANDUM & ORDER**

18-CV-4031 (ERK) (LB)

───────────────────────────────

Korman, *J.*:

    On June 14, 2012, a man walked up to Dimitri Prus outside of a nightclub in Brooklyn and stabbed him in the chest with a foot-long knife. Trial Tr., ECF Nos. 9-2 to 9-5 (Ex. B), at 229-30, 343-44, 493-95, 512-13. The man ran away. Prus and his friend Ruben Polano chased after him. *Id.* at 345-46, 495. Meanwhile, Alter Aiferman, a man sitting outside a nearby café eating dinner with his family, watched as the three passed and saw the attacker plunge a knife into Prus a second time. *Id.* at 228-30, 346, 497-98. Polano then hit the attacker in the head with a pepper shaker, to no avail. *Id.* at 228-29, 496-97, 505. Because Aiferman recognized Prus and Polano, he pursued the attacker, as Prus and Polano stayed behind. *Id.* at 226, 228, 231.

    At one point during the pursuit, the attacker jumped into the back seat of an unlocked, parked car occupied by Mr. and Mrs. Emhoff—an elderly couple—and one of them screamed, "He has a knife!" *Id.* at 233-34, 363-65. The Emhoffs exited the vehicle, and so did the attacker, who eventually made his way into Top Burger restaurant. *Id.* at 233-35. Once in the restaurant, the attacker approached the register and told the manager, Shanna Nemirovsky, to call the police. *Id.* at 431-40. Nemirovsky noticed blood on the man's hand, and the man headed toward the bathroom. *Id.* Aiferman followed the attacker into the bathroom and watched as he wiped off the

1

knife, threw it into the garbage, and removed a glove from his hand. *Id.* at 236-37. Once the attacker exited the bathroom, Aiferman struck him with a chair to stop him from fleeing. *Id.* at 238-39, 432, 439.

The attacker escaped, but Aiferman provided a description of the assailant to a detective when police arrived. *Id.* at 258-59. He showed the detective a video he had taken of the pursuit and emailed the detective a still photograph of the assailant. *Id.* at 124-34, 258-59. The police recovered the knife from the blood-stained bathroom, and blood samples were taken from the knife, bathroom, and chair. *Id.* at 56-57, 65, 231.

Meanwhile, Prus was treated at the hospital for his injuries. *Id.* at 347. He sustained two large wounds, consistent with being cut by a knife. *Id.* at 316-17, 325-26, 350. The day after the attack, Prus developed an expanding hematoma in his left chest muscle, requiring a blood transfusion and surgery. *Id.* at 319-20. He remained hospitalized for several days as he recovered and ultimately survived. *Id.*

A tip led police to arrest petitioner Dimitri Rudenko, *id.* at 130-31, who Aiferman identified in a line-up as the attacker, *id.* at 260-61. DNA testing revealed that the blood samples recovered from the Top Burger bathroom door and chair matched Rudenko, and blood on the handle of the knife matched Prus. *Id.* at 103-07. Police also gathered surveillance footage from Top Burger showing a man resembling Rudenko in the restaurant, but the prosecution lost the tape prior to trial. *Id.* at 173, 214. Prosecutors charged Rudenko with multiple crimes, including attempted second-degree murder and completed first-degree assault.

At trial, multiple witnesses testified against Rudenko, including Aiferman, Prus, Polano, Mr. Emhoff, and Nemirovsky. Both Rudenko and Nemirovsky identified Rudenko in open court as the attacker. *Id.* at 238, 433. Prus and Polano provided descriptions of the attacker's clothing

consistent with Rudenko, *id.* at 343, 355, 360, 493-94, and Prus showed the jury two large scars from the stab wounds, which remained visible nearly two years after the incident, *id.* at 351-52. The prosecution's other witnesses included the police officers who conducted the investigation, along with a forensic scientist who explained the DNA evidence and a medical doctor who explained the nature of Prus's wounds.

Rudenko represented himself at trial and testified on his own behalf. While he admitted that he was at Top Burger restaurant on June 14, 2012, he claimed that Aiferman was intoxicated and attacked him. *Id.* at 557-64. He also requested and received an adverse inference instruction regarding the lost surveillance footage. *Id.* at 537-40. The jury ultimately acquitted Rudenko of attempted second-degree murder and convicted him of first-degree assault and third-degree criminal possession of a weapon. *Id.* at 710.

Following trial, Rudenko was able to obtain a copy of the surveillance footage from Top Burger. Sentencing Tr. (Ex. C), ECF No. 9-1, at 21-22. Although the video showed a man resembling Rudenko in the restaurant, Rudenko argued that the video exonerated him because the timestamp read June 15, 2012 rather than June 14, 2012, meaning that he was not in the restaurant on the date in question. Mot. Set Aside Verdict, ECF No. 9-6 (Ex. H), at 92-93. The trial judge disagreed; after viewing the video, he found no basis to disturb the jury's verdict. Sentencing Tr. 15. Indeed, Rudenko had admitted on the stand that he was inside the restaurant on June 14. Trial Tr. 557-64.

Following conviction, Rudenko unsuccessfully moved pro se to set aside the verdict on multiple grounds, including the prosecution's failure to turn over the surveillance footage. Sentencing Tr. 12-14; Mot. Set Aside Verdict. A judge later sentenced Rudenko principally to a term of fifteen years imprisonment. Sentencing Tr. 22-23.

Counsel was appointed to represent Rudenko on appeal. Though Rudenko moved to relieve counsel during the appellate process and instructed counsel not to file a brief on his behalf, the Appellate Division denied his motion. Exs. 1 & 3 to Pet. Writ Coram Nobis, ECF No. 1, at 75-77, 83. Appellate counsel proceeded to file a merits brief, arguing that (1) the prosecution failed to prove serious physical injury sufficient to sustain a first-degree assault conviction; (2) the trial judge improperly admitted expert testimony on the nature of the injury; and (3) the prosecutor made inappropriate comments during summation. *See* App. Div. Br., ECF No. 9-1 (Ex. D), at 87. The Appellate Division rejected these arguments and affirmed the conviction on June 28, 2017. *People v. Rudenko*, 54 N.Y.S.3d 597 (App. Div. 2017).

In July 2017, Rudenko filed a petition for a writ of error coram nobis, alleging that appellate counsel was ineffective for failing to raise other meritorious issues on appeal, which was also denied. Pet. Writ Coram Nobis. In rejecting the petition, the Appellate Division concluded that Rudenko "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Rudenko*, 70 N.Y.S.3d 862, 862 (App. Div. 2018). The New York Court of Appeals denied review of both decisions of the Appellate Division. *People v. Rudenko*, 31 N.Y.3d 1121 (2018); *People v. Rudenko*, 30 N.Y.3d 953 (2017). Relying solely on the issues raised in his coram nobis petition, Rudenko now seeks a writ of habeas corpus on the basis of ineffective assistance of appellate counsel.

## DISCUSSION

Federal habeas relief is only available if the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is doubly deferential because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotations and citations omitted).

"Under *Strickland v. Washington*, in order to demonstrate ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner must show (1) that his counsel's representation 'fell below an objective standard of reasonableness,' and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). When the performance of appellate counsel is challenged, the petitioner must show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Even then, petitioner must also establish "a reasonable probability that . . . he would have prevailed." *Id.* at 285. "[A]s a result of the interaction between AEDPA and *Strickland*, the question . . . becomes 'whether there is any reasonable argument that [Rudenko's] counsel satisfied *Strickland's* deferential standard.'" *Chrysler*, 806 F.3d at 118 (quoting *Harrington*, 562 U.S. at 105).

I. *Rudenko's Claims Would Not Have Succeeded on Direct Appeal*

"[T]he reasonableness of appellate counsel's decision not to raise" a given claim "depends in part on whether that claim would have succeeded" had it been raised, making it appropriate to "address *Strickland's* second prong first, applying AEDPA's differential standard,

5

before turning next to the objective reasonableness of appellate counsel's representation." *Id.* at 119. None of the claims raised here by Rudenko would have succeeded on direct appeal.

### A. Claims Underlying Petitioner's Motion to Set Aside the Verdict

First, Rudenko claims that his appellate counsel failed to appeal the trial court's denial of his motion to set aside the verdict and to raise the issues underlying that motion on appeal. As a preliminary matter, the denial of a motion to set aside a verdict under New York C.P.L. § 330.30 is not independently appealable; rather, the proper course is to raise the underlying issues on direct appeal from the judgment of conviction. *See People v. Workman*, 716 N.Y.S.2d 198, 201 (App. Div. 2000). Regardless, the issues underlying petitioner's § 330.30 motion are meritless.

#### 1. Alleged *Brady* Violation: Surveillance Video

Prior to trial, the prosecution disclosed that it had lost the surveillance video from Top Burger restaurant showing Rudenko entering the restaurant on the night in question. 3/6/14 Hr'g Tr. (Ex. A), ECF No. 9-2, at 12. Rudenko considers the video exculpatory, however, because the date stamp indicated the video was recorded on June 15, 2012 rather than June 14. At trial, Rudenko asked for an adverse inference instruction, which the trial court granted. Trial Tr. 537-40. The video was later located and presented to the trial judge, who concluded that the video provided no basis to disturb the verdict. Sentencing Tr. 15. Nevertheless, Rudenko argues that appellate counsel should have raised a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), which requires that "[t]he evidence at issue must be favorable to the accused, . . . that evidence must have been suppressed by the State, . . . and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

Putting aside that the trial court's adverse inference instruction cured any prejudice, *see People v. Johnson*, 756 N.Y.S.2d 548, 550 (App. Div. 2003), the *Brady* claim surely would have

6

failed on appeal in the face of overwhelming evidence putting Rudenko in the Top Burger bathroom on June 14, 2012.

First and foremost, Rudenko admitted on the stand multiple times that he was in the Top Burger bathroom on June 14, 2012. Trial Tr. 553, 556-57. Both Aiferman and the restaurant cashier testified that they saw Rudenko enter the Top Burger bathroom on the evening of June 14, 2012. *Id.* at 235, 251, 430-33, 435-40. And the knife was recovered from the bathroom that same night. *Id.* at 56-57. If that were not enough, blood samples taken that same day from the bathroom door and restaurant chair matched Rudenko. *Id.* at 103-07. Accordingly, there is no reasonable probability that if the jury had seen surveillance footage date-stamped June 15, 2012—which, under the circumstances, was almost certainly an error—it would have rendered a different verdict. Indeed, it is hard to imagine a stronger collection of evidence establishing Rudenko's presence in the Top Burger bathroom on June 14, 2012. For these reasons, petitioner could not have established prejudice. *See Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 124 (2d Cir. 2015) (prejudice element of *Brady* claim requires demonstrating "a reasonable probability of a different result" (quotations omitted)).

2. <u>Ineffective Assistance of Trial Counsel</u>

Rudenko also moved the trial court to set aside his conviction because he received ineffective assistance of "counsel" and "co-counsel." But Rudenko waived his right to counsel and chose to proceed pro se. "A defendant who, after sufficient inquiry, is permitted to represent himself may not be heard to complain on appeal that he was denied effective assistance of counsel." *People v. Duffy*, 750 N.Y.S.2d 228, 288 (App. Div. 2002). And "a defendant has no constitutional right to hybrid representation." *People v. Rodriguez*, 95 N.Y.2d 497, 502 (2000). To the extent Rudenko's claim stems from trial counsel's failure to conduct a pretrial

7

investigation, such claims premised on material outside of the record are not properly presented on direct appeal. *See People v. Haynes*, 893 N.Y.S.2d 284, 285 (N.Y. App. Div. 2010).

        3.      <u>Sufficiency of the Evidence and Admissibility of the Knife</u>

Next, petitioner's motion to set aside the verdict asserted that the trial court improperly admitted the knife, and without it, there was insufficient evidence to support the verdict. However, there is no colorable basis upon which to question the admission of the knife. Aiferman saw Rudenko stab the victim with a knife, wipe it off, and dispose of it in the restaurant bathroom, where the knife was recovered. Trial Tr. 229-30, 236-37. Nemirovsky also identified Rudenko. *Id.* at 433. Prus and Polano provided descriptions of the attacker's clothing consistent with Rudenko. *Id.* at 343-44, 355, 360, 493-94. Moreover, blood samples recovered from the bathroom and knife matched Rudenko and the victim, respectively. *Id.* at 103-07. Finally, at trial, a police officer confirmed that the knife offered into evidence was indeed the knife recovered from the scene. *Id.* at 56-59. "These circumstances provided a sufficient connection between the knife and the defendant to render the knife admissible." *People v. Vargas*, 509 N.Y.S.2d 149, 150 (App. Div. 1986); *see People v. Connelly*, 35 N.Y.2d 171, 174 (1974) ("If the object was . . . found at the scene of the crime, the foundation is laid once it is shown that the thing offered is the one recovered and that its condition is substantially unchanged."). "[A]ny alleged defects in the . . . chain of custody went to the weight of the evidence rather than its admissibility." *Adams v. Keyser*, 2018 WL 2089337, at *6 (S.D.N.Y. May 3, 2018). Besides, even without the knife, ample evidence supported the verdict—"the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." *United States v. Frampton*, 382 F.3d 213, 222 (2d Cir. 2004) (quoting *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979)).

### 4. Failure to Correct False Testimony

Finally, Rudenko argued that the prosecutor failed to correct false testimony. But "there was no objectively false testimony to correct." *People v. Stevens*, 778 N.Y.S.2d 16, 17 (App. Div. 2004) (quotations omitted). Rudenko's "assertion that the prosecution introduced perjured testimony is nothing more than a claim that certain witnesses were unworthy of belief because of various inconsistencies in the trial evidence, a claim that the jury properly considered and rejected in reaching its guilty verdict." *People v. Johnson*, 774 N.Y.S.2d 523, 533 (App. Div. 2004).

### B. Additional Claims

Aside from the issues raised in Rudenko's motion to set aside the verdict, he puts forth additional issues appellate counsel failed to raise on appeal, none of which have merit.

### 1. Additional Alleged *Brady* Violations

Rudenko claims that appellate counsel was ineffective for failing to pursue relief based on other *Brady* violations in addition to the lost surveillance video. Specifically, he alleges that the prosecution failed to preserve and disclose a video and photograph from Aiferman's cellphone depicting Rudenko's flight from the scene of the stabbing. Both claims fail.

First, the still photograph—which Aiferman emailed to a detective—was disclosed to the defense and received into evidence at trial. Trial Tr. 137. To the extent Rudenko challenges the prosecution's failure to disclose metadata associated with the photograph, there is nothing in the record to suggest that the prosecution possessed additional, non-disclosed data. Moreover, Rudenko did not request an adverse inference instruction with respect to any undisclosed data associated with the still photograph, rendering the claim unpreserved. *See id.* at 460; *People v. Atkins*, 649 N.Y.S.2d 449, 450 (App. Div. 1996).

Second, the video recording was never in the prosecution's possession. Aiferman had shown the video to a detective, but neither the police nor prosecutors ever received it, Trial Tr. 129, 461-62, 541; thus, it was not *Brady* material. *See Miller v. Smith*, 2010 WL 4961666, at *11 (E.D.N.Y. Dec. 1, 2010) ("prosecution never had possession" of surveillance video where detective "only received 'video stills'" and not the video itself); *People v. Walloe*, 931 N.Y.S.2d 48, 49 (App. Div. 2011) (police did not possess video viewed by officer that the owner later erased). Regardless, in light of the overwhelming evidence of guilt—and without any indication at all that video would have benefitted Rudenko—there is no "reasonable probability of a different result." *See Lewis v. Conn. Comm'r of Corr.*, 790 F.3d at 124.

2. Sufficiency of Identity Evidence

Next, Rudenko argues that the evidence adduced at trial was legally insufficient to establish his identity as the attacker. But, at the close of the prosecution's case, Rudenko did not move to dismiss on the basis that the prosecution failed to establish identity. *See* Trial Tr. 515-16. As such, Rudenko's sufficiency claim based on identity was unpreserved for appellate review. *See, e.g.*, *People v. Wright*, 961 N.Y.S.2d 803, 804 (App. Div. 2013). In any event, the identity evidence was legally sufficient for the reasons described in Section I.A.3, *supra*.

3. Authentication of Photographs

Rudenko also submits that appellate counsel should have challenged the admission of the photograph of Rudenko that Aiferman emailed to the detective because, without a time stamp, date stamp, or "IP address," it was not properly authenticated. Under New York law, the authenticity of a photograph may be "established through testimony that the photograph 'accurately represent[s] the subject matter depicted," which may be verified by "any person having the requisite knowledge of the facts." *People v. Price*, 29 N.Y.3d 472, 477 (2017) (quoting *People v. Byrnes*, 33 N.Y.2d 343, 347 (1974)). Here, Aiferman testified that he took the

photograph of the defendant on the night in question, which he emailed to a detective. Trial Tr. 259. The detective likewise testified that Aiferman emailed him the photo in his presence that same night. *Id.* at 136-37. This evidence was sufficient to authenticate the photograph. Regardless, it is also reasonable to conclude that any error resulting from the admission of the photograph was harmless given the abundant identity evidence. *See Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985).

4. <u>Admissibility of Medical Evidence</u>

Finally, Rudenko takes issue with the admission of expert testimony that the victim's wounds could have been caused by a knife and the victim's medical records. These claims are likewise without merit. The record demonstrates that the medical expert was qualified to render an opinion regarding the nature of the victim's injuries given his expertise in general surgery and treating traumatic injuries. Trial Tr. 313. *See, e.g.*, *People v. Hamilton*, 947 N.Y.S.2d 705, 706-07 (App. Div. 2012). Moreover, there was an evidentiary basis for the hypothetical questions posed. *See* N.Y. C.P.L.R. § 4515. With respect to the medical records, the alleged inconsistencies in the records regarding the victim's name did not render them inadmissible. *See Meegan v. Progressive Ins. Co.*, 838 N.Y.S.2d 748, 751 (App. Div. 2007) ("Plaintiffs' contention with respect to the accuracy of the entry in th[e] medical records goes to the weight to be given to the medical records, not their admissibility."). And non-testimonial statements within medical records do not implicate the Confrontation Clause. *Cf. Pham v. Kirkpatrick*, 711 F. App'x 67, 70 (2d Cir. 2018).

## II. *Appellate Counsel Was Reasonable in Not Pursuing Additional Claims*

In light of the analysis above demonstrating that the Appellate Division would have rejected Rudenko's additional proposed claims, "a fairminded jurist could also determine that [Rudenko] failed to satisfy the first prong of *Strickland* because his appellate counsel's

11

representation did not fall 'below an objective standard of reasonableness.'" *Chrysler*, 806 F.3d at 123 (quoting *Strickland*, 466 U.S. at 688)). Indeed, "a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 288. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . ." *Id.* at 754. With this in mind, "reasonable jurists could well conclude that [Rudenko's] appellate counsel did not act unreasonably in focusing" on the issues presented by Rudenko's direct appeal rather than the defective arguments raised here. *See Chrysler*, 806 F.3d at 124. Accordingly, "the Second Department did not apply *Strickland* unreasonably in rejecting [Rudenko's] coram nobis petition." *Id.* at 125.

I have carefully reviewed petitioner's remaining arguments and conclude they are without merit.

## CONCLUSION

The petition for a writ of habeas corpus is denied. I decline to issue a certificate of appealability.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York
March 19, 2019

Edward R. Korman
United States District Judge

12